IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02733-JLK
Criminal Action No. 09-cr-00301-JLK-5

**UNITED STATES OF AMERICA**,

        Plaintiff-Respondent,

v.

**5.  JUSTIN HERNANDEZ**,

        Defendant-Movant.

_____

**OPINION AND ORDER ON MOTION TO VACATE SENTENCE**
_____

**Kane, J.**

## Introduction

After a jury trial, Defendant Justin Hernandez was convicted of conspiracy to commit assault resulting in serious bodily injury in violation of 18 U.S.C. § 371 (Count 1) and second-degree murder in violation of 18 U.S.C. § 1111(a) and 2(a) (Count 2).  Doc. 993 at 1.  This Court sentenced Defendant to 60 months on Count 1 and 480 months on Count 2, to run concurrently.  *Id*. at 2.  Defendant appealed his conviction, which was affirmed by the Tenth Circuit in *United States v. Rosalez*, 711 F.3d 1194 (10th Cir. 2013).  Defendant petitioned for certiorari, which was denied on October 7, 2013.  Doc. 1269-4.

Defendant now brings a motion to modify or vacate his sentence pursuant to 28 U.S.C. § 2255.  Doc. 1269.  Defendant argues that he received ineffective assistance of counsel during trial, and that his due process rights were violated when the prosecutor engaged in misconduct by allowing perjured testimony to be presented to the grand jury.  Doc. 1269 at 4-6.  In particular, Defendant asserts that his counsel was ineffective in (1) failing to request recusal based on

certain remarks made by the Court; (2) failing to cross-examine or directly call Ivan Ocon, who testified for a co-defendant; and (3) failing to obtain a handwriting expert to dispute Defendant's authorship of a letter introduced at trial.  *Id*.

### Factual Background

Defendant's conviction arose from a fatal attack on Pablo Zuniga-Garcia, an inmate at the Federal Correctional Institute (FCI) in Florence, Colorado.  *Rosalez*, 711 F.3d at 1199. Hernandez is a member of the Sureños prison gang, and he was the leader of that gang at the FCI in Florence.  *Id*.  Hernandez believed that Zuniga-Garcia had disrespected him and was questioning his authority.  *Id*.  Hernandez asked Zuniga-Garcia's cellmate, Mark Rosalez, who was in charge of the Sureños in FCI's Pueblo Bravo unit, to help him recruit other Sureños members to "beat down" Zuniga-Garcia.  *Id*.  Hernandez hoped that Zuniga-Garcia would be beaten badly enough to receive a medical transfer.  *Id*.  Four Sureños carried out the beating, while two others served as lookouts.  *Id*.  The four who carried out the beating struck Zuniga multiple times with combination locks attached to fabric belts.  *Id*. at 1200.  Zuniga died from multiple blows to his head.  *Id*. at 1199.

Hernandez was tried jointly with three of the other inmates.  At trial, various government witnesses established that there was a conflict between Zuniga-Garcia and Hernandez, and that the two had engaged in a heated discussion in the prison yard two weeks prior to Zuniga-Garcia's death.  *Id*. at 1218.  The government also introduced two letters into evidence, which were purportedly written by Hernandez and linked him to the crime.  Doc. 883 at 2748, 2797. The defendants were convicted of all the charges against them.  *Rosalez*, 711 F.3d at 1201.

### Analysis

1. ### Ineffective Assistance of Counsel Claims

To prevail on a claim for ineffective assistance of counsel, Defendant must show: (1) his counsel's representation was objectively unreasonable under prevailing professional norms; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see United States v. Weeks*, 653 F.3d 1188, 1200-01 (10th Cir. 2011) (applying *Strickland* test to ineffective assistance of counsel claims in § 2255 motion). Under the first prong of this test, Defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Under the second prong of the *Strickland* test, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

In his motion, Defendant claims that his trial counsel was ineffective in failing to (1) request recusal based on certain remarks by the Court allegedly evidencing bias; (2) cross examine Ivan Ocon when he was called by a co-defendant; and (3) call a handwriting expert in order to counter the prosecution's assertion that Defendant was the author of a damaging letter introduced at trial. Doc. 1269 at 4-6. Defendant also alleges that his due process rights were violated when AUSA Richard Hosley committed prosecutorial misconduct by allowing Bryce Malcom to give false testimony to the grand jury. *Id*. at 6. In addition, Defendant was granted leave to amend his § 2255 motion to include a claim that his trial counsel was ineffective in failing to request that the indictment be dismissed pre-trial based on this same alleged prosecutorial misconduct. *See* Docs. 1300 & 1301. The government filed a response addressing this new claim. Doc. 1302.

### a.  Failure to Request Recusal

Defendant's claim that Court was biased is based in part on the following remarks made by the Court regarding Defendant Morones's motion to have his trial severed from that of the other defendants:

> This is how I anticipate . . . the defense coming forward with the evidence. That each defense attorney, looking after the best interests of his own client, and Mr. Morones quite understandably looking out for his own best interests, I think it's going – my impression is the scenario would be this: that Mr. Hernandez said to his lieutenant, he needs to be taught a lesson, take care of it. The lieutenant then secures other members of the Sureños gang, some who operate as lookouts to make sure that the prison authorities and guards don't see what's happening. . .
>
> Now, that scenario suggests an argument that the – Mr. Hernandez didn't order this person to be killed, merely to be disciplined; the lieutenant didn't order him to be killed, merely disciplined; the lookouts were merely following orders and were not knowledgeable about any effort or intent to kill, and the one or two who were in the cell with Mr. Morones and the deceased abandoned any sort of conduct on their part to achieve killing and it was only Mr. Morones and his conduct that was tantamount and amounts to murder.
>
> Now I may be wrong. That may not be the way the evidence is going to come out, but I'm looking at 50 years of experience, and I don't want to be flippant about this, but there's an old expression that makes a lot of sense, that if it looks like a duck and it walks like a duck and it quacks like a duck, it's a duck. And that's the way it looks to me. Irrefutably it looks to me, whether represented by counsel or *pro se*, that Mr. Morones is standing alone with a lot of other people putting him in that position. And I am not suggesting that it's wrong. I think that's what trial is about.

Doc. 1060 at 47-48.  Defendant asserts that the Court's remark that "if it walks like a duck and quacks like a duck, it's a duck" and reference to the Defendant's "lieutenant" indicated the Court's "opinion of the Defendants' roles."  Doc. 1269 at 4.  The Defendant also takes issue with the Court's "one-sided compliment" to Assistant United States Attorney Hosley after he stated in front of the jury that he would "like to be able to present our case without the defense attorneys hijacking our witnesses," Doc. 878 at 1476:

> So the lawyers are under a great deal of stress. And Mr. Hosley said that the defendants had hijacked the Government's witness. And that's not a term that we would accept as [sic] a appropriate. And the defense did not hijack a witness. I

permitted this to happen, and that's what took place. But I also want you to know that I have the greatest admiration for Mr. Hosley, and he is a gentleman and he has apologized to counsel for that excess, and I would attribute it just to the heat of the moment. So let's, let's forget about that and move on.

Doc. 878 at 1518-19.  The test for assessing a judge's impartiality is objective.  *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).  According to the Tenth Circuit, the test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).  "The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom."  *Cooley*, 1 F.3d at 993.

I cannot agree that the Court's use of the expression "if it looks like a duck and it walks like a duck and it quacks like a duck, it's a duck" evidences any sort of bias.  In context, it is clear that the use of the expression was meant to indicate that the Court's view of how counsel for the various defendants would present evidence and construct a narrative at trial in the context of explaining why a separate trial for Defendant Morones might be appropriate.  *See* Doc. 1060 at 46 (emphasizing that the remarks to follow were not "any kind of finding").  The comment was not directed at Defendant Hernandez, and in fact had nothing to do with him.  In addition, even if the remark did suggest bias, Defendant has not identified any actual rulings or substantive consequences thereof.

Defendant also alleges that the Court's statement to counsel that "[if] [y]ou want a son of a bitch on the bench[,] you just got him" suggests bias against him.  Doc. 878 at 1516; *see* Doc. 1269 at 5.  This statement was made to the attorneys in the case, outside the presence of the jury, in order to indicate that the Court would "not tolerate any further temper tantrums or excesses by counsel," Doc. 878 at 1516, and in response to the AUSA's remark in front of the jury that defense counsel was "hijacking" his witnesses.  *See* Doc. 878 at 1515-16.  The statement was not

directed at Defendant or any of his co-defendants, and was intended to (and did) encourage more polite behavior by counsel so as not to distract the jury with personality conflicts among the lawyers. Placed in this context, this remark does not suggest any bias or require recusal. *See Liteky v. United States*, 510 U.S. 540, 556 (1994) ("A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.").

Finally, the Court's remarks that "I have the greatest admiration for [AUSA] Hosley, and he is a gentleman and he has apologized to counsel for that excess," Doc. 878 at 1519, do not provide any basis for recusal. These remarks were made in the context of explaining that AUSA Hosley's "hijacking" comment was inappropriate, and were intended to counteract the effect of personal rancor among counsel on the jury. They do not suggest any bias or provide any basis for recusal. *See Andrade v. Chojnacki*, 338 F.3d 448, 458 (5th Cir. 2003) ("[A] judge's 'compliments in the course of legal proceedings should not ordinarily support a partiality challenge.'").

### b. Failure to Cross-Examine/Call Ivan Ocon

Defendant's next claim is that his trial counsel was ineffective in failing to cross examine Ivan Ocon when he was called as a witness by Defendant Rosalez, and in failing to call Mr. Ocon directly in order to rebut damaging testimony from Mr. Ocon elicited by the government. Doc. 1269 at 5.

In his direct appeal, Defendant argued that his Confrontation Clause rights were violated when the Court did not permit him to cross-examine Mr. Ocon, and the Tenth Circuit agreed. *See Rosalez*, 711 F.3d at 1217. The Tenth Circuit, however, proceeded to conclude that this error was harmless beyond a reasonable doubt because "Ocon's testimony was in large part

cumulative of the testimony provided by the government's witnesses" and "was by no means

critical to the government's case against any of the defendants, including Hernandez." *Id*. at

1217-18.  That finding of harmless error precludes a finding that Defendant was prejudiced

under *Strickland* by his counsel's failure to cross-examine Ocon or to call him directly.  *See*

*United States v. Ramirez*, 388 Fed. Appx. 807, 811 (10th Cir. 2010) (unpublished) ("harmless

error holding entails" that *Strickland* prejudice prong is not met).

### c.   Failure to Obtain Handwriting Expert

Defendant's next claim is that his trial counsel was ineffective in failing to retain and call

a handwriting expert, or otherwise mount any kind of defense, in order to dispute that a

damaging letter introduced at trial was authored by him.  Doc. 1269 at 6.  Defendant asserts that

the letter "was in an envelope addressed by another inmate" and "was mailed from a facility that

movant was not in at the time it was mailed or found by staff."  *Id*.  Defendant's suggestion that

he could not possibly have been the author of the letter is misleading, because he was moved

from the facility where the letter was mailed on the date of its mailing.  *See* Doc. 883 at 2794-95,

2797-98, 2803.  In addition, the testimony at trial showed that the inmate who actually mailed

the letter was housed next door to Defendant before he was moved, and that inmates often send

letters under another inmate's name by slipping them to a neighboring cell.  *See* Doc. 883 at

2736-37, 2803.  Thus, the evidence at trial suggested that Defendant was the author of the letter,

and Defendant has not indicated that any handwriting expert would have testified any differently.

*See Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (rejecting ineffective assistance

claim based on failure to retain expert where defendant "failed to show . . . that medical experts

could have reached a conclusion . . . contrary to the conclusions reached" by the prosecution's

witnesses); *Martinez v. Tafoya*, 13 F. App'x 873, 877 (10th Cir. 2001) (unpublished) ("When an

ineffective assistance claim centers on a failure to investigate and elicit testimony from

witnesses, the petitioner must 'demonstrate, with some precision, the content of the testimony

they would have given at trial.'").  Accordingly, Defendant's claim that his trial counsel was

ineffective in failing to call a handwriting expert fails.

## 2.  Due Process/Prosecutorial Misconduct Claim

Defendant's next claim is that his due process rights were violated when AUSA Richard

Hosley allowed Bryce Malcom to give allegedly perjured testimony to the grand jury that

contradicted a Bureau of Prisons video to which the prosecutor had access.  Doc. 1269 at 6.  In

the first place, Defendant's claim is procedurally barred because although he has alleged that his

trial counsel was ineffective in failing to move to dismiss the indictment before trial, *see* Doc.

1300, he has not alleged that his appellate counsel was ineffective in failing to raise this claim on

direct appeal, and thus he has not shown "cause" for his procedural default.  *See United States v.

Warner*, 23 F.3d 287, 291 (10th Cir. 1994) ("A defendant's failure to present an issue on direct

appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing

his procedural default and actual prejudice resulting from the errors of which he complains, or

can show that a fundamental miscarriage of justice will occur if his claim is not addressed.").

In addition, given the petit jury's subsequent finding of guilt, Defendant must show that

the alleged errors "go beyond the question of whether the grand jury had sufficient evidence

upon which to return an indictment" so as to "render the proceedings fundamentally unfair" as

opposed to errors that are "technical or procedural and affect[] only the probable cause charging

decision." *United States v. Hillman*, 642 F.3d 929, 936 (10th Cir. 2011); *see United States v.

Mechanik*, 475 U.S. 66, 72-73 (1986).  The inconsistencies in Bryce Malcom's grand jury

testimony are more properly characterized as "technical." *See United States v. Cleaver*, 236 F.

App'x 359, 361 (10th Cir. 2007) (unpublished) (finding that "specific factual inconsistencies

8

between witnesses' grand jury testimony, their testimony at trial, and their statements on various government-produced recordings" did not render proceedings fundamentally unfair); *United States v. Wiseman*, 172 F.3d 1196, 1205-06 (10th Cir. 1999) *abrogated on other grounds by Rosemond v. United States*, 134 S. Ct. 1240, 1244-45 (2014) (characterizing allegations that prosecutor improperly "testified" in remarks to the grand jury as "technical errors"); *compare United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996) (suggesting fundamental fairness would be compromised by "flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment").

## Conclusion

For the reasons given above, Defendant's motion (Doc. 1269) is **DENIED**.


Dated:  January 22, 2016                              *s/ John L. Kane*
                                                      Senior U.S. District Judge